UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OSCAR LEE HILLIARD, Jr.,

    Petitioner,

v.

                    CASE NO. 5:07-CV-14409
                    HONORABLE JOHN CORBETT O'MEARA
                    UNITED STATES DISTRICT JUDGE

BRUCE CURTIS,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

        Oscar Lee Hilliard, Jr., ("Petitioner"), presently confined at the Cotton Correctional Facility in Jackson, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for one count of first degree criminal sexual conduct, M.C.L.A. 750.520b(1)(d). For the reasons stated below, the petition for writ of habeas corpus is **DENIED.**

**I. Background**

        Petitioner was convicted of the above offense following a jury trial in the Eaton County Circuit Court. Both petitioner and respondent have provided the Court with extensive factual summaries of the case. Because the facts of this case have been repeated numerous times, they need not be repeated here in their entirety. Therefore, only a brief overview of the facts is required. *See Nevers v. Killinger,* 990 F. Supp. 844, 847 (E.D. Mich. 1997). Accordingly, the Court will merely recite verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review. *See Long v. Stovall,* 450 F. Supp. 2d 746, 749 (E.D. Mich. 2006):

1

On the evening of July 5, 2002, Amanda Scofield went to place some job applications and had some drinks at two bars, Reno's and then the Green Door. Scofield testified that after a few drinks of a rum and coke at the Green Door she only has one brief memory of being in a truck and that when she woke up in the morning Clark Hulliberger had his finger inserted in her vagina. Scofield left Hulliberger's home and went to the hospital indicating that she thought that she had been raped. An investigation led to Hulliberger and defendant. The investigation revealed that defendant had sexual intercourse with Scofield in Hulliberger's bed and had left prior to when Hulliberger assaulted Scofield. Hulliberger had went in to wake Scofield when he inserted his finger into her vagina.

Hulliberger plead guilty to second-degree criminal sexual conduct.[1] There was no dispute that defendant sexually penetrated Scofield. The prosecution's contention was that Hulliberger was defendant's accomplice and that when defendant had sexual intercourse with Scofield she was physically helpless, unconscious, asleep, or physically unable to communicate and did not want to participate, and that defendant knew or should have known she was in one of these states. Defendant's contention was that the sexual intercourse with Scofield was consensual.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Dr. Charles Simpson, an expert of Neuropsycho Pharmacology (the study of mind or mood altering drugs), was called out of order to testify for the defense due to scheduling problems. Dr. Simpson testified that a person's tolerance is significant to determine how they are affected by alcohol, and that a heavy drinker would have a higher tolerance. Dr. Simpson further testified that a blackout is a significant memory loss. Dr. Simpson opined that an experienced drinker may experience a blackout with approximately a .25 blood alcohol content (BAC) while an inexperienced drinker may experience a blackout with approximately a .14 or .15 BAC. Dr. Douglas Segan, with St. Lawrence Hospital, testified that Scofield had a BAC of .06 just before noon on July 6, 2002, and that based on averages her BAC might have been around .24 on July 5, 2002, assuming she stopped drinking around 11:00 p.m. According to Dr. Simpson, at .24 an experienced drinker would show signs of intoxication but could exhibit fairly normal behavior. Dr. Segan also acknowledged that some people can function with a BAC of .24. Dr. Simpson testified that decisions can be made in blackout and are made all of the time because people are often still functioning and answering. Based on defense calculations of Scofield's height, weight, and how much she had to drink and during what time periods, Dr. Simpson calculated that Scofield's BAC could have been between .233 and .268 at midnight if she had no drinks from 10:30 to midnight, and that if she had

---

[1] Hulliberger was charged with first-degree criminal sexual conduct and entered a plea agreement to the reduced charge of second-degree criminal sexual conduct and agreed to testify for the prosecution against defendant. (footnote original).

a drink between 10:30 and midnight her BAC at midnight might have been between .281 and .308. Using another calculation, Dr. Simpson determined that Scofield's BAC at midnight could have been between .202 and .271. Dr. Simpson opined that a highly tolerant person could still be functioning at the levels discussed above and there would likely, at least, be a partial blackout, but the individual could still make choices even if in and out of consciousness. Dr. Simpson claimed that if he knew Scofield's average consumption pattern, how often and how much she drank, he could form an opinion on how she would potentially be behaving.
**************************************************************
With regard to alcohol tolerance, Scofield testified that normally two twenty-ounce beers and a shot would not affect her or give her a "buzz." Seemingly, this supports defendant's contention that Scofield was an experienced drinker. Scofield also testified that she drank two or three times a month prior to the incident. Scofield further testified that she was not an experienced drinker to the point of memory impairment. But, after defense counsel pointed to some of her preliminary examination testimony, Scofield acknowledged that she had some memory loss from drinking when she was younger.

On the night in question, Scofield acknowledged that she had consumed two twenty-ounce beers and some shots of tequila (two or three) at Reno's. Terry Dormer testified that Scofield may have had three twenty-ounce beers, and some shots. Michael Isenhath testified that after this drinking Scofield could still play pool. Scott Becker added that after the drinks at Reno's, Scofield did not appear to be drunk and was not stumbling. Scofield drove her vehicle from Reno's to the Green Door. Scofield testified that when she went to the Green Door she had a "buzz," but was not drunk. Scofield claimed that at the Green Door she had part of one rum and coke and could remember nothing after that. Dormer testified that, when he left the Green Door, Scofield looked "pretty drunk," so he told the bouncer to keep an eye on her. Scofield was cutoff from being served alcohol. Eric Kelly, the doorman at the Green Door, testified that Scofield was out of control and thought she should be cutoff and that something else besides alcohol may have been in her system. But Kelly testified that Scofield was "functioning pretty decent," could walk, and her motor skills were good. Kelly further testified that Scofield was all over the bar trying to get guys to buy drinks for her. Jennifer Costigan testified that Scofield was acting erratic and may have been under the influence of more than alcohol. Scofield left the Green Door with defendant and Hulliberger. Hulliberger testified that, at this time, Scofield was very intoxicated and was in and out of consciousness. Defendant testified that, when he and Scofield left the Green Door, she was walking, wanted to spend the night, and that they were kissing. Defendant acknowledged that Scofield "nodded out" in the truck, but claimed that she awoke when they arrived at Hulliberger's home. Defendant testified that Scofield walked upstairs to the bedroom. Defendant further testified that he went upstairs and Scofield asked him to go get her a beer, and that when he returned she was lying on the bed naked. Defendant claimed that he and Scofield started kissing again and that

3

she rolled over and they had sexual intercourse. According to defendant, Scofield was an active participant, but fell asleep after climaxing. Defendant claims he then quit and got dressed.

*People v. Hilliard,* No. 252521, * 1-3, 5-6 (Mich.Ct.App. January 18, 2005).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 474 Mich. 855; 702 N.W. 2d 581 (2005). Petitioner then filed a petition for writ of habeas corpus, which was dismissed without prejudice because petitioner had failed to exhaust all of his claims with the state courts. *Hilliard v. Curtis,* No. 2006 WL 2061500 (E.D. Mich. July 24, 2006)(Gadola, J.). Petitioner then filed a post-conviction motion for relief from judgment with the trial court, which was denied. *People v. Hilliard,* No. 03-103-FC(Eaton County Circuit Court, October 2, 2006). The Michigan appellate courts denied petitioner leave to appeal. *People v. Hilliard,* No. 273928 (Mich.Ct.App. May 18, 2007); *lv. den.* 480 Mich. 892; 738 N.W. 2d 749 (2007).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Was there a jurisdictional defect where the state district court failed to establish the actus reus to bind defendant over to the circuit court for trial in violation of state and federal constitutional rights to due process?

II. Was the evidence insufficient to establish mens rea where the victim never stated or testified she had not willingly consented to having sexual intercourse with the defendant, causing defendant to suffer a miscarriage of justice in violation of the state and federal constitutional rights to due process of law?

III. Was the defendant denied a fair trial where the prosecution used and allowed false and perjured testimony to go uncorrected in order to obtain an unjust conviction in violation of the state and federal constitutional rights to due process of law?

IV. Was the defendant denied the right to present a full and fair defense of consent where the judge failed to instruct the jury on consent, violating defendant's state and federal constitutional rights to due process?

V. Was there a miscarriage of justice where defendant was charged under an accomplice theory and statute where the victim stated and identified the individuals who were sexually assaulting her when she awoke and defendant was not present or

4

accompanying the assailant, in violation of defendant's right to due process?

VI. Was defendant denied the right to equal protection of the right to a fair trial by the cumulative effect of prosecutorial misconduct, in violation of the Sixth and Fourteenth Amendment state and federal constitutional rights?

VII. Was defendant denied his Sixth and Fourteenth Amendment rights to effective assistance of counsel, in violation of the state and federal right to equal protection and due process?

VIII. Where defendant was denied the effective assistance of appellate counsel which rises to the level of Sixth and Fourteenth Amendment state and federal constitutional violation, does the ineffectiveness satisfy the good-cause requirement of MCR 6.508(D) to preclude default or delay?

IX. The trial court reversibly erred in denying a defense request to present evidence showing the complainant's prior drinking history as that evidence was admissible under MRE 703 as facts or data from which the defense expert witness would base his opinion, was not being sought to be admitted as character evidence under MRE 404, and the denial violated Mr. Hilliard's constitutional right to present his defense.

## II.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases: An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable

5

application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III.  Discussion

**A. Claims # 1-8.  The procedurally defaulted claims.**

Respondent contends that petitioner's first eight claims are procedurally defaulted because petitioner raised these claims for the first time in his post-conviction motion and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by M.C.R. 6.508(D)(3).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.

In the present case, the Eaton County Circuit Court denied petitioner's first, second, third, fourth, fifth, sixth, seventh, and eighth claims in his post-conviction motion, finding that he had failed to establish good cause for failing to raise his new claims in his appeal of right with the Michigan Court of Appeals and/or any actual prejudice.  The Michigan appellate courts denied petitioner leave to appeal "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  Under the circumstances, the Michigan courts clearly invoked the provisions of M.C.R. 6.508(D)(3) to procedurally bar petitioner's claims. *See e.g. Howard v.*

*Bouchard,* 405 F. 3d 459, 477 (6th Cir. 2005).

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

With respect to his procedurally defaulted claims, petitioner alleges ineffective assistance of appellate counsel as cause to excuse his default. Petitioner, however, has not shown that appellate counsel was ineffective.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client

7

> would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard. "

*Id.* at 463 U.S. at 754.

Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at 753 (citations omitted).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (*quoting Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F. 3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003). Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting his first through eighth claims. Appellate counsel filed a thirty three page brief on appeal which raised petitioner's ninth claim, *infra,* that the trial court violated his right to present a defense by

excluding testimony of the victim's prior drinking history. [2] The Michigan Court of Appeals, in fact, agreed that the trial court committed error in excluding this evidence, although they found the error to be harmless in light of the additional evidence that was presented in support of petitioner's defense. Petitioner has not shown that appellate counsel's strategy in presenting this claim and not raising other claims was deficient or unreasonable. Moreover, for the reasons stated by the Michigan Attorney General in their answer to the petition for writ of habeas corpus, none of the claims raised by petitioner in his post-conviction motion were "dead bang winners." Because the defaulted claims are not "dead bang winners," petitioner has failed to establish cause for his procedural default of failing to raise his first through eighth claims on direct review. *See McMeans v. Brigano,* 228 F. 3d 674, 682-83 (6th Cir. 2000); *Meade,* 265 F. Supp. 2d at 872.

In the present case, petitioner has failed to demonstrate cause to excuse the default. Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary for this Court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. at 533; *See also Isabell v. Curtis,* 36 Fed. Appx. 785, 788 (6th Cir. 2002); *Payne v. Smith,* 207 F. Supp. 2d 627, 638-39 (E.D. Mich. 2002).

Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this court to consider these claims as a ground for a writ of habeas corpus in spite of the procedural default. Petitioner's sufficiency of evidence claims are insufficient to invoke the actual innocence doctrine to the procedural default rule. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). Because petitioner has not

---

[2] *See* Appellant's Brief on Appeal, dated July 26, 2004[Part of this Court's Dkt. # 10-19].

presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review petitioner's procedurally defaulted claims on the merits. *See Payne,* 207 F. Supp. 2d at 639.

Finally, to the extent that petitioner is raising his ineffective assistance of appellate counsel claim (Claim # 8) as an independent ground for relief, he is not entitled to the issuance of a writ of habeas corpus. First, as mentioned above, petitioner has failed to show that appellate counsel was deficient in failing to present the omitted claims on his appeal of right.

Moreover, petitioner is unable to show that he was prejudiced by his appellate counsel's failure to raise these claims on his appeal of right, in light of the fact that these same claims were presented to the Michigan trial and appellate courts on petitioner's post-conviction motion for relief from judgment and rejected by them. *See Hollin v. Sowders*, 710 F. 2d 264, 265-67 (6th Cir. 1983); *Johnson v. Warren,* 344 F. Supp. 2d 1081, 1096 (E.D. Mich. 2004); *Bair v. Phillips,* 106 F. Supp. 2d 934, 938, 943 (E.D. Mich. 2000). The state courts' rulings on petitioner's motion for post-conviction relief granted petitioner an adequate substitute for direct appellate review and therefore his attorney's failure to raise his first through seventh claims on petitioner's appeal of right did not cause him any injury. *Bair,* 106 F. Supp. 2d at 943 (citing *Gardner v. Ponte*, 817 F. 2d 183, 189 (1st Cir. 1987)). In this case, there is no point in remanding this case to the state courts to reconsider a case that they have already adversely decided on more than one occasion. *Gardner*, 817 F. 2d at 189.

Petitioner is not entitled to habeas relief on his first through eighth claims.

**B. Claim # 9. The right to present a defense claim.**

In his ninth claim, petitioner contends that the trial court violated his right to present a

defense by denying his attempts to present witnesses who would have testified to the victim's prior drinking history, which was admissible under M.R.E. 703 as evidence that petitioner's expert witness, Dr. Simpson, based his opinion on concerning the victim being conscious but in an alcoholic blackout when petitioner engaged in sexual intercourse with her.

The Michigan Court of Appeals agreed that the trial court erred in excluding this evidence, but found that reversal was not required because the error was harmless and not prejudicial to petitioner's defense, because the error was not outcome determinative in light of the weight of the properly admitted evidence which supported petitioner's defense. *Hilliard,* Slip. Op. at * 2, 4, 6-7.

The Michigan Court of Appeals specifically found there was sufficient evidence presented to support that the victim had the type of alcohol tolerance that allowed her to function after consuming a significant amount of alcohol and that she could experience a blackout, thus, providing context to Dr. Simpson's opinion that the victim was in a blackout during her sexual encounter with petitioner. *Id.* at * 5. The victim testified that normally two twenty-ounce beers and a shot would not affect her or give her a "buzz," which supported petitioner's allegation that the victim was an experienced drinker. The victim also testified that she drank alcohol two or three times a month prior to the incident. Although the victim testified that she was not an experienced drinker to the point of memory impairment, the victim admitted, after being confronted with her preliminary examination testimony, that she had some memory loss from drinking when she was younger. *Id.*

The Michigan Court of Appeals further noted that the victim, as well as several other witnesses, testified that the victim had consumed a considerable amount of alcohol on the night

11

in question. Several of these witnesses testified that the victim did not appear drunk, was able to play pool, and was able to drive her vehicle from Reno's, the first bar she was at, to the Green Door, after consuming this alcohol. Although there was testimony that the victim appeared "pretty drunk" and "out of control" by the time that she was at the Green Door, the doorman at the Green Door testified that the victim was "functioning pretty decent", could walk, and her motor skills were good. *Id.* at * 5.

Petitioner testified that when he and the victim left the Green Door, she was walking, wanted to spend the night with him, and was kissing petitioner. Although petitioner acknowledged that the victim "nodded out" in the truck, he claimed that she woke up when they arrived at Hulliberger's home. Petitioner testified that the victim walked upstairs to the bedroom and asked him to go get her a beer. When petitioner returned, the victim was lying on the bed naked. Petitioner testified that he and the victim started kissing again and that they then had sexual intercourse. Petitioner claimed that the victim was an active participant, but fell asleep after climaxing. *Id.* at * 6.

The Michigan Court of Appeals concluded that petitioner failed to demonstrate that it was more probable than not that any error affected the outcome of the trial in light of the weight of the properly admitted evidence. The testimony of the victim's roommate and a former boyfriend regarding her drinking was not significant because the victim acknowledged that she had a high tolerance for alcohol. The victim further admitted that normally forty ounces of beer and a shot of tequila would not affect her or her ability to walk. The victim also acknowledged that she had blackouts in the past. The trial court also allowed the most relevant testimony with regard to the victim's tolerance for alcohol on July 5, 2002, which was evidence of how much

12

alcohol she consumed that night and how she was functioning. This evidence supported that the victim had a high tolerance for alchohol. The testimony provided the context for Dr. Simpson's expert opinion that the victim was in an alcoholic blackout during her encounter with petitioner. *Id.* at pp. 6-7.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (*quoting Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)).

Moreover, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas

petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F. 3d 507, 511-12 (6th Cir. 2003).

Under Michigan law, "a preserved evidentiary error warrants reversal only where the defendant overcomes the presumption that the error was harmless, that is, it is more probable than not that the error affected the outcome." *Allen v. Howes,* --- F.Supp.2d ----, 2009 WL 483206, * 16 (E.D. Mich. February 25, 2009(citing M.R.E. 103; *People v. Lukity*, 460 Mich. 484, 495-496; 596 N.W.2d 607, 612-13 (1999)). Michigan courts "are reluctant to find reversible error in the exclusion of defense evidence when the evidence is 'cumulative,' that is, when the proposition has been proved by other evidence admitted at trial." *Id. (Citing People v. McLaughlin*, 258 Mich.App. 635, 652-57; 672 N.W.2d 860, 872-74 (2003)).

In this case, the Michigan Court of Appeals found that the excluded evidence of the victim's history of alcohol use was cumulative to other evidence that was presented at trial. This Court reviewed the evidence presented at trial, as discussed above, and concludes that the Michigan Court of Appeals' conclusion does not amount to an unreasonable determination of the facts. *Allen,* --- F.Supp.2d ----, 2009 WL 483206, Slip. Op. at * 16. Any error in excluding the testimony of the victim's roommate and ex-boyfriend concerning her prior alcohol use was harmless, in light of the fact that the victim acknowledged a tolerance for alcohol and a history of alcoholic blackouts, there was extensive testimony concerning the victim's alcohol intake on the night in question, and a number of witnesses testified that the victim appeared to be conscious and functioning in spite of her extensive alcohol consumption that night. *See United States v. Riley*, 657 F. 2d 1377, 1388 (8th Cir. 1981)(district court exclusion of records about

14

witness's use of LSD and blackouts was harmless error because witness testified about her drug abuse).  All of this evidence supported petitioner's expert witness' conclusion that the victim was conscious but in an alcoholic blackout at the time of her sexual encounter with petitioner.  With the quantum of evidence on the defense theory in the record, this Court concludes that the petitioner was afforded "a meaningful opportunity to present a complete defense." *Allen,* --- F.Supp.2d ----, 2009 WL 483206, Slip. Op. at * 14 (citing *Crane,* 476 U.S. at 690 (citation and internal quotations omitted)).  Accordingly, petitioner is not entitled to habeas relief on his ninth claim.

### IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a

valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.* A district court has the power to deny a certificate of appealability *sua sponte. Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right with respect to any of the claims. The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen,* 156 F. Supp. 2d at 798.

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

                                            s/John Corbett O'Meara
                                            United States District Judge

Date: March 20, 2009

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, March 20, 2009, by electronic and/or ordinary mail.

                                               s/William Barkholz
                                               Case Manager